IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH

| EDGARDO MATA, | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [98] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
|---|---|
| Plaintiff, | |
| v. | Case No. 2:15-cv-00575 |
| AARON DOUGLAS et al., | District Judge David Nuffer |
| Defendants. | |

Plaintiff, Edgardo Mata, an inmate at Utah State Prison (USP), seeks relief for alleged civil-rights violations by state employees regarding his conditions of confinement. *See* 42 U.S.C.S. § 1983 (2018). In his Amended Complaint, (Doc. No. 33), Plaintiff names as defendants: Alfred Bigelow (warden), Craig Buchannon (gang sergeant), Joseph Coombs (physician assistant), Scott Crowther (warden), Aaron Douglas (nurse), FNU Harris (gang sergeant), Jason Hutchinson (sergeant), Jason Nicholes (captain), Dustin Nielson (housing officer), Christopher North (narcotics agent), FNU Rentmiester (gang sergeant), Sidney G. Roberts (doctor), Dallas Ray (lieutenant), Dane Thurston (physician assistant), Pete Walters (gang investigator), Ronald Wilson (captain), and Kelly Worley (gang sergeant).

The Amended Complaint contains claims of inadequate medical treatment regarding knee injury and mental health (Eighth Amendment); retaliation (First Amendment); failure to protect

(Eight Amendment); and, due-process and equal-protection violations as to gang and housing classification.[1]

Defendants now move for summary judgment. As explained below, the Court grants the motion in part. But, first, the Court screens out Plaintiff's claim of inadequate mental-health treatment.

## I. SUA SPONTE DISMISSAL

### A. GROUNDS FOR DISMISSAL

In evaluating the propriety of dismissing claims for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the

---

[1] Though Plaintiff uses the acronym ADA to qualify a type of shower available to disabled inmates and a type of assistant he was hoping to be assigned, he refers to the shower and the assistant that he was denied under his claim regarding medical treatment. The Court does not read this as a separate claim under the Americans with Disabilities Act and does not treat it as such, although Defendants do so in their summary-judgment motion.

pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

This Court must construe pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). In the Tenth Circuit, this means that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

### B. AFFIRMATIVE LINK

The complaint must clearly state what each individual defendant did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each defendant is essential allegation). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, No. 08-2222, slip op. at 4 (10th Cir. July 20, 2009) (unpublished) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

3

### C. CLAIM NOT LINKED TO NAMED DEFENDANT

The Amended Complaint has a section entitled, "Plaintiff is being denied necessary mental health treatment. (Am. Compl., Doc. No. 33, at 46.) In it, he details his attempts, between June 22 and September 13, 2016, to see a psychiatrist. (*Id*. at 46-47.) He identifies people he spoke with and wrote to requesting to see a psychiatrist. (*Id*. at 46-47.) However, he does not link his failed efforts to any of the named defendants. The lack of an affirmative link to named defendants renders this potential claim invalid and it is dismissed.

### II. SUMMARY-JUDGMENT STANDARD

This Court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1). Summary judgment's purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a

rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In ruling on a summary-judgment motion, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

This Court notified Plaintiff that, in response to a summary-judgment motion, "Plaintiff cannot rest upon the mere allegations in the complaint. Instead . . . Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial." (Docket No. 11, at 5-6.)

Defendants' assertion of qualified immunity modifies the summary-judgment review. Asserting qualified immunity, a state employee creates a rebuttable presumption that she is immune from the plaintiff's § 1983 claims. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). And rather than "focus[ing] on the existence of genuine disputes of material fact," the court must "'determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* questions before the court.'" *Spencer v. Abbott*, No. 16-4009, 2017 U.S. App. LEXIS 24668, at *10 n.6 (10th Cir. Dec. 5, 2017) (unpublished) (emphasis in original) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1243 (10th Cir. 2015)).

The qualified immunity analysis has two parts: first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right; and second, "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If

the plaintiff fails to satisfy either element of his burden, the court must grant the defendant qualified immunity. *See Medina*, 252 F.3d at 1128.

If the material facts are not disputed, the question of immunity "is a legal one for the court to decide." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). Such is the case here.

### A. INADEQUATE-MEDICAL-TREATMENT CLAIMS

The claims here are based on Plaintiff's circumstances after he hurt his left knee on September 4, 2013. (Am. Compl., Doc. No. 33, at 8.) During the following months, he sought treatment from USP medical personnel.

The defendants involved here are Coombs, Douglas, Roberts and Thurston. The deprivations that Plaintiff alleges are as follows:

(1) from November 18, 2013 to December 1, 2013, failure to admit him to the infirmary as he requested (Defendants Coombs, Douglas and Roberts); and

(2) from November 18, 2013 to December 2, 2013, denial of treatment for post-operative period and for shower fall--e.g., pain medication, durable medical equipment, and follow-up visits with UMC personnel (Defendants Coombs, Douglas, Roberts, and Thurston).

### 1. LEGAL STANDARDS

The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). To state a cognizable claim under the Eighth Amendment for failure to provide proper medical care, "a prisoner must allege acts or omissions *sufficiently harmful* to evidence

deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Any Eighth Amendment claim must be evaluated under objective and subjective prongs: (1) "Was the deprivation sufficiently serious?" And, if so, (2) "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under the objective prong, a medical need is "sufficiently serious . . .if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citations and quotation marks omitted).

The subjective component requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

Delay in receiving treatment is cognizable only if the delay was caused by deliberate indifference and resulted in substantial harm. *Olson,* 9 F.3d at 1477. "[I]n the context of a

missed diagnosis or delayed referral, there must be direct or circumstantial evidence that 'the need for additional treatment or referral to a medical specialist is obvious,'" and "'where a doctor merely exercises his considered medical judgment,'" no deliberate indifference exists. *Sparks*, 690 F. App'x at 604 (quoting *Self v. Crum*, 439 F.3d 1227, 1231-32 (10th Cir. 2006)).

## 2. UNDISPUTED MATERIAL FACTS[2]

(1) At all relevant times, Plaintiff was housed either at Utah State Prison (USP) or Central Utah Correctional Facility (CUCF).

(2) 9/4/18 - Plaintiff injured his left knee. (Am. Compl., Doc. No. 33, at 8.)

(3) 9/5/13 - Plaintiff saw Defendant Thurston who prescribed a knee brace. (*Id*. at 8-9; *see also* Medical Issue 792095, Doc. No. 33-1, at 21; M-Track notes, Doc. No. 91-7, at 2 (issuing "knee sleeve plastic hinge").) Defendant Thurston also ordered an x-ray and prescribed Toradol. (M-Track notes, Patient Encounter notes of 9/5/13, Doc. No. 33-1, at 8.)

(4) 9/11/13 - Left knee radiographs were done at University Medical Center (UMC). (Provider Report, Doc. No. 91-7, at 95.)

(5) 9/12/13 - Defendant Thurston prescribed Tramadol for thirty days. (M-Track notes, Patient Encounter notes of 9/12/13, Doc. No. 33-1, at 7; M-Track notes, Doc. No. 91-7, at 4.) Defendant Thurston noted that he was "awaiting consult with ortho." (Patient Encounter notes, Doc. No. 91-7, at 20.)

(6) 9/18/13 - Plaintiff was seen by Defendant Coombs, who gave Plaintiff "a proper leg immobilizer with side braces." (Am. Compl., Doc. No. 33, at 10.) Defendant Coombs

---

[2] The only facts set forth here regard those claims to which Plaintiff has affirmatively linked defendant(s). Any other allegations irrelevant to named defendants are not considered.

8

reviewed an x-ray of the knee and noted that he would arrange an MRI. (M-Track notes, Patient Encounter notes of 9/18/13, Doc. No. 33-1, at 7.)

(7) 10/2/13 - Dr. Burnham prescribed Tramadol for thirty days. (M-Track notes, Doc. No. 91-7, at 4.)

(8) 10/28/13 - Defendant Coombs authorized an "outside consult" for Plaintiff. (Patient Encounter, Doc. No. 91-7, at 19.) A UMC doctor did an "initial evaluation" and determined Plaintiff should "be scheduled for meniscal repair." (Progress Notes, Doc. No. 91-7, at 87.)

(9) 11/5/13 - PA Abbott prescribed Tramadol for sixty days. (M-Track notes, Doc. No. 91-7, at 4.)

(10) 11/14/13 - PA Duford refilled tramadol prescription. (Patient Encounter notes, Doc. No. 91-7, at 18-19.)

(11) 11/18/13 - UMC orthopedic surgeons repaired Plaintiff's left knee and provided pain medication (*Id.* at 11; UMC Operative Report, Doc., No. 33-1, at 1; UMC Health Care note, Doc. No. 91-7, at 83.) Defendants Coombs and Douglas allegedly denied Plaintiff's request to be housed in the infirmary instead of Wasatch A-West. (Am. Compl., Doc. No. 33, at 11 & 14.) Defendant Coombs issued Plaintiff crutches, (Medical Issue 813946, Doc. No. 33-1, at 21; M-Track notes, Doc. No. 91-7, at 2), and prescribed Lortab for four days. (M-Track notes, Doc. No. 91-7, at 3.) PA Chris Abbott also prescribed Lortab for two days. (*Id.*)

(12) 11/20/13 - Plaintiff had physical therapy as part of the treatment plan for his knee. (M-Track notes, Patient Encounter of 11/20/13, Doc. No. 33-1, at 16.) He was warned to be more diligent "in his exercise routine." (*Id.*)

(13) 11/25/13 - Plaintiff alleges he told Defendant Roberts that A-West was too cold; his pain medication was not strong enough; and he wanted to be placed in the infirmary (Am. Compl., Doc. No. 33, at 12.) Defendant Roberts prescribed Lortab for three days and noted that Plaintiff "has not been doing his [range-of-motion] as instructed." (M-Track notes, Doc. No. 91-7, at 3; Patient Encounter notes, Doc. No. 91-7, at 17.)

(14) 12/1/13 - Plaintiff slipped and fell in the shower. (*Id*.) Defendant Nielson witnessed Plaintiff fall and hit his nose on the shower chair; Defendant Nielson alerted "medical." (*Id*; UDOC Initial Contact Report, 12/1/13, Doc. No. 33-1, at 17; UDOC Incident Report, 12/1/13, No. 33-1, at 18.) Defendant Douglas examined Plaintiff for injuries and "cleared" him. (Am. Compl., Doc. No. 33, at 12; UDOC Incident Report, 12/1/13, No. 33-1, at 18.)

(15) 12/2/13 - Defendant Coombs ordered an outside consult for Plaintiff's left knee. (UDOC Outside Consult Detail Form, Doc. No. 33-3, at 8.) An orthopedic specialist saw Plaintiff and ordered a "hinged knee brace" and "followup prisoner clinic in 4 weeks." (Office visit report, Doc. No. 33-3, at 55.)

(16) 12/4/13 - Plaintiff had physical therapy as part of the treatment plan for his knee. (M-Track notes, Patient Encounter of 12/4/13, Doc. No. 33-1, at 16.) He was warned to be more diligent "in his exercise routine." (*Id*.) Defendant Coombs issued Plaintiff a "knee brace with hinge." (Medical Issue 818475, Doc. No. 33-1, at 21; M-Track notes, Doc. 91-7, at 2.) Defendant Coombs also prescribed azithromycin for five days. (M-Track notes, Doc. No. 91-7, at 4.)

(17) 12/9/13 - Plaintiff had physical therapy; his range of motion had improved. (M-Track notes, Patient Encounter of 12/9/13, Doc. No. 33-1, at 72.)

(18) 12/13/13 - Defendant Coombs issued Plaintiff a shower chair, noting, "needs it for 6 weeks, not to bear weight on this knee that had surgery." (Medical Issue 821300, Doc. No. 33-1, at 21; M-Track notes, Doc. No. 91-7, at 2.)

(19) 12/30/13 - Plaintiff had a follow-up appointment with UMC doctors regarding his knee surgery. (Follow-Up Clinic Note, 12/30/18, Doc. No. 33-1, at 69.) The doctors noted,

> He states overall he is doing well. He has been working on physical therapy. He has had some increased pain over the past couple of days after he slipped during the shower. . . . On physical examination, the patient's wounds appear to be well-healed. . . . At this point, I think he can advance to full weightbearing over the next week. He should work on aggressive physical therapy to work on range of motion.

(*Id*.) Plaintiff also saw Defendant Coombs, who noted "left knee w meniscal repair, increase wt. bearing, rom strengthening, get rom back and then do ACL reconstruction. f/u in 6 weeks." (Patient Encounter notes, Doc. No. 91-7, at 14.) Defendant Coombs referred Plaintiff to an outside specialist and to a physical therapist. (*Id*. at 15.)

### 3. APPLYING LAW TO FACTS

Based on the undisputed facts--supported by hundreds of pages of medical records and declarations that the Court has thoroughly reviewed--this Court cannot possibly term Defendants to be deliberately indifferent to Plaintiff's injured knee. To the contrary, Defendants either met with Plaintiff themselves, or arranged for Plaintiff to meet with another medical provider (e.g., a UMC specialist or the physical therapist), seventeen times during the four-month period at issue here. That averages out to a medical encounter less than every seven days. And at each visit, active treatment of some kind took place--i.e., prescriptions and medical equipment were

authorized and dispensed; specialists were called upon, tests were done, therapy was provided, surgery was even performed.

Far from "deliberate indifference"--"the unnecessary and wanton infliction of pain"-- the record over many sick visits shows Defendants ensuring treatment for the injury every time. *Estelle*, 429 U.S. at 104 (quotation marks & citation omitted). It may not have been the exact medication or dosage or other treatment that Plaintiff wanted, but the medical care was uniformly adequate in that Plaintiff's expressed need for help with pain and injury was consistently treated by Defendants. Plaintiff disputes this, but his allegations are entirely unsupported.

Plaintiff's point really is that he, as an unqualified layperson, wanted more or different treatment from the medical professional defendants--not, as it must be shown to prevail, that Defendants, with full knowledge of the deleterious effects of their actions or inactions, outright ignored or even exacerbated Plaintiff's serious medical needs (assuming Plaintiff's needs were serious). *Id.* at 107 (stating that, when inmate contended "that more should have been done by way of diagnosis and treatment" and "suggest[ed] a number of options that were not pursued, that was "a classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment"). As a matter of law, Defendants' treatment of Plaintiff, as it is set forth in undisputed evidentiary submissions, simply cannot be said to "offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id*. at 106.

Thus, under the qualified immunity analysis, Plaintiff has not shown that the government officials violated a constitutional right. Defendants, therefore, are entitled to qualified immunity.

And, the inadequate-medical-care claims against Defendants Coombs, Douglas, Roberts and Thurston are dismissed.

## B. RETALIATION CLAIM

Plaintiff asserts that his announcement to Defendant Wilson, on July 14, 2014, that he would be filing a grievance made him a target for retaliation by Defendants North and Nicholes. (Am. Compl., Doc. No. 33, at 44.).

### 1. LEGAL STANDARDS

"It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.'" *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith*, 899 F.2d at 947). To show retaliation, Plaintiff must prove three elements: (1) Plaintiff was involved in "constitutionally protected activity"; (2) Defendants' behavior injured Plaintiff in a way that "would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants' injurious behavior was "substantially motivated" as a reaction to Plaintiff's constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

The Court assumes--for purposes of this Order only--that the first two elements are met. *See Ellis v. Franco*, No. CIV 15-0848, 2017 WL 3052503, at *8 (D.N.M. July 12, 2017) (report & recommendation). This Order will next consider whether (based on the undisputed material facts) Defendants' behavior (i.e., bringing and then dropping a drug charge) was substantially motivated by their knowledge of Plaintiff stating he would file grievance(s).

"[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Thus,

13

"to satisfy the third prong of the First Amendment test, an inmate must allege specific facts showing that '*but for* the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Banks v. Katzenmeyer*, 645 F. App'x 770, 772 (10th Cir. 2016) (emphasis added) (quoting *Peterson,* 149 F.3d at 1144 (internal quotation marks omitted)). This is a "heightened standard" that requires Plaintiff to show "a triable issue not only that retaliation for [his statement that he would file grievance(s)] played a role in [his drug charge] but that such retaliation was the decisive factor." *Strope v. McKune*, 382 F. App'x 705, 710 (10th Cir. 2010) (unpublished); *see also Smith,* 899 F.2d at 949 (stating plaintiff must "prove that the actual motivating factor behind defendants' actions was retaliation for his prior or current litigation"); *Strope v. Cummings*, 381 F. App'x 878, 884 (10th Cir. 2010) (unpublished) ("Keeping in mind the rigorous burden placed on Strope to show not only that a retaliatory motive may have played some role in his transfer but that such a motive was the strict but-for cause of his transfer, we conclude that he has failed to make the necessary showing on this element to defeat summary judgment, i.e., his evidence was 'merely colorable' at best and not 'significantly probative.'") (citations omitted). Therefore, it is critical to Plaintiff's avoidance of summary judgment on his retaliation claim that he detract from Defendants' alternative justification for the drug charge. *See McKune*, 382 F. App'x at 710.

### 2. UNDISPUTED FACTS

(1)     7/10/14 - Defendant North searched Plaintiff's cell. (Am. Compl., Doc. No. 33, at 45; Nicholes aff., Doc. No. 91-1.) He confiscated an unknown substance, appearing to be "black tar heroin." (Am. Compl., at 45; Nicholes aff., at 3.)

(2) 7/14/18 - Plaintiff "made Defendant Wilson aware Plaintiff was going to file a prisoner grievance (protected conduct) for the cruel and unusual punishment Plaintiff was receiving." (Am. Compl., Doc. No. 33, at 44.)

(3) 7/15/18 – Plaintiff was charged with possessing a controlled substance in a disciplinary form signed by Defendants North and Nicholes. (UDOC Disciplinary Form, Doc. No. 33-3, at 75).

(4) 7/21/14 - Lab analysis later revealed that "[n]o controlled substances were identified in the dark brown solid. (Criminalistic Analysis Report, Doc. 33-3, at 77-78; Nicholes aff., at 3.) The disciplinary charge was therefore dismissed. (Nicholes aff., at 3.)

### 3. APPLYING LAW TO FACTS

Plaintiff's evidence of retaliation relies entirely upon an inference drawn from the timing between his statement to Defendant Wilson (that he would file a grievance) and the issuance of the drug charge. He essentially argues that Defendants' actions all happened within a tight timeframe of a day; and, therefore, their actions must have been in reaction to Plaintiff's statement and intent to file a grievance.

It is true that, often, retaliation must be proven with circumstantial evidence. *See Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990) ("Precisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence."). However, even when drawing "all justifiable inferences" in Plaintiff's favor as required, "a fair-minded jury" could not "return a verdict for the plaintiff on the evidence presented." *Smith*, 899 F.2d at 949.

For instance, Plaintiff presented no evidence to undermine Defendants' alternative justification: The search was routine, his cell was randomly chosen, and a suspicious substance was found. *See id*. Instead, his "attribution of retaliatory motive is conjectural and conclusory." *Cummings*, 381 F. App'x at 883; *see also Banks*, 645 F. App'x at 774 n.2 ("A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient to create a genuine issue of fact concerning [a] First Amendment retaliation claim." (internal quotation marks and citation omitted) (alteration in original)); *Ellis*, 2017 U.S. Dist. LEXIS 108683, at *21 ("An inmate's mere speculation that actions taken by correctional officials were in retaliation for the exercise of his First Amendment rights cannot defeat summary judgment.") While he may very well have participated in a protected activity by stating he would lodge a grievance, that by itself does not provide the required nexus for his retaliation claim. *See id*. "If it did, litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness." *Cf. id*. (filing of lawsuit instead of filing of grievance). Of course, Plaintiff was not inoculated from standard conditions of confinement simply because he was preparing to file a grievance. *See id*. The Tenth Circuit has "consistently held that temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Id*. While Plaintiff argues a time correlation, he does not show other circumstantial evidence that might strengthen his hand--e.g., other "coincidences," or patterns of behavior. *See Smith*, 899 F.2d at 949.

All that is left are Defendants' explanations that the search and charge filed were routine. Indeed, the search and confiscation of suspected drugs occurred on July 10, 2014--four days

before Plaintiff told Defendant Wilson that he would file a grievance. *See id*. It is the drug charge that came one day later. Even if Plaintiff firmly believes that the timing of his statement and the drug charge were closely tied together and could arouse suspicion that the events were correlated, "temporal proximity per se is insufficient to show that the stated explanation for a challenged action is pretextual." *Id*.; *see also Smith v. Drawbridge*, No. CIV-16-1135-HE, 2017 U.S. Dist. LEXIS 175923, at *27 (W.D. Okla. Sept. 8, 2017) (report & recommendation) (stating "'suspicious timing,' without more, is insufficient to support a reasonable inference that these actions" were taken because Plaintiff exercised constitutional rights). Defendants "have come forward with reasons for essentially every action taken against [Plaintiff]." *Northington v. Zavaras*, No. 99-1184, 2000 U.S. App. LEXIS 19113, at *10 (10th Cir. August 10, 2000) (unpublished).

Beyond this, there is no hint of an allegation that Defendant Wilson had any interaction with Defendants Nicholes and North, from one day to the next, to report that Plaintiff had threatened to file a grievance. Even if he had, it strains reason to infer that Defendants Nicholes and North would then quickly cook up a scheme to use potential contraband that they had found in Plaintiff's cell four days earlier to trump up a charge against him that very day. This is particularly ludicrous when the drug test showed a few days later that the contraband was not an illegal drug and the charge was unceremoniously dropped and not pursued again.

Plaintiff's claim of retaliation fails due to his lack of evidence showing that, but-for a motive of retaliation regarding Plaintiff's exercise of his purported First Amendment right to file a grievance, Defendants would not have filed a drug charge regarding the contraband they found in a random search four days earlier.

Because this Order concludes that Defendants did not violate Plaintiff's constitutional right here, it will not address the second prong of the qualified-immunity analysis. *Medina*, 252 F.3d at 1128 ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."). Defendants Nicholes and North are granted qualified immunity. And they are dismissed from the case.

### III. REMAINING LITIGATION

In light of the above, the following parties and issues remain pending in this litigation:

(1) Remaining defendants: Bigelow, Buchannon, Coombs, Crowther, Douglas, Harris, Hutchinson, Nielson, Rentmeister, Roberts, Ray, Thurston, Walters, Wilson, and Worley.

(2) Remaining claims: Inadequate medical treatment or dangerous conditions of confinement regarding the shower, the bunkbeds, and bottom-bunk clearance; failure to protect; and violations of the Due Process and Equal Protection Clauses in continuing to designate Plaintiff as a gang member.

(3) Remaining motion: Defendants' Motion for Summary Judgment, (Doc. No. 98), except for the parts granted above.

Plaintiff's motion for appointed counsel was denied in a past order, in which the Court noted, "however, if after the case develops further, it appears that counsel may be needed or of specific help, the Court will ask an attorney to appear *pro bono* on Plaintiff's behalf." (Doc. No. 5.) Now that time has come: The Court has determined that counsel may be of specific help for the limited purpose of drafting an amended response to the remaining issues and defendants in Defendants' summary-judgment motion here. (Doc. No. 98.) The Court therefore vacates its past order denying counsel.

**IT IS HEREBY ORDERED** that:

(1) Plaintiff's claim of denial of mental-health treatment is **DISMISSED** with prejudice.

(2) Defendants' summary-judgment motion is **GRANTED** as to Plaintiff's retaliation claim.

(3) Defendants' summary-judgment motion is **GRANTED** as to certain of Plaintiff's inadequate-medical-treatment claims against Defendants Coombs, Douglas, Roberts and Thurston.

(4) The Court's order denying counsel is **VACATED**. (Doc. No. 5.) Plaintiff's motion for appointed counsel is now **GRANTED**. (Doc. No. 3.)

(5) The Clerk of Court must secure *pro bono* counsel to represent Plaintiff at this time in a limited capacity.

(6) Counsel shall enter an appearance within fourteen days of appointment.

(7) The scope of this *pro bono* appointment is limited to helping Plaintiff file an amended response to the remaining portions of Defendants' summary-judgment motion, (Doc. No. 98).

(8) The scope of the limited appearance does not extend beyond this specific task.

(9) When the purpose of this appointment has been completed, counsel is directed to file a Notice of Fulfillment of Limited Appointment.

(10) Within ninety days of entering appearance of counsel, Plaintiff's counsel shall file an amended response to Defendants' summary-judgment motion.

(11) Plaintiff must not file any more pleadings in this case before consulting his attorney. Effective now, any documents Plaintiff submits directly to the Court will be returned to him.

(12) Other pending motions are **DENIED** as moot. (Doc. Nos. 114, 116, & 120.)

Dated September 28, 2018.

BY THE COURT:

_____
David Nuffer
United States District Judge