IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EDGARDO MATA,<br><br>                      Plaintiff,<br><br>vs.<br><br>AARON DOUGLAS ET AL.,<br><br>                   Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-CV-575 DN<br><br>District Judge David Nuffer |

Plaintiff, Edgardo Mata, is a *pro se* prisoner proceeding *in forma pauperis.* (ECF No. 5.)
In his verified amended civil-rights complaint, he requests declaratory and injunctive relief, and
compensatory and punitive damages. (ECF No. 33, at 54-57.)

## I. BACKGROUND

Plaintiff named, in their individual and official capacities, the following defendants: (1)
Bigelow (warden); (2) Buchannon (gang sergeant); (3) Coombs (physician assistant); (4)
Crowther (warden); (5) Douglas (registered nurse); (6) Harris (gang sergeant); (7) Hutchinson
(housing sergeant); (8) Nicholes (SWAT captain); (9) Nielson (housing officer); (10) North
(narcotics agent); (11) Ray (housing lieutenant); (12) Rentmeister (gang sergeant); (13) Roberts
(medical doctor); (14) Thurston (physician assistant); (15) Walters (gang investigator); (16);
Wilson (housing captain); and (17) Worley (gang sergeant). (*Id*. at 3-7.)

He asserted the following claims under the United States Constitution: (a) equal-
protection and due-process violations regarding his gang designation; (b) cruel and unusual

punishment regarding medical treatment (including mental health), failure to protect, and poor housing conditions; and (c) retaliation.

On March 3, 2018, as ordered, Defendants filed a *Martinez* report,[1] with nineteen exhibits, including declarations, policy directives, prison records (medical and otherwise), investigative reports, and grievance copies. (ECF No. 84.) On April 2, 2018, Defendants followed up with a summary-judgment motion. (ECF No. 98.) On May 21, 2018, Plaintiff responded to the motion for summary judgment, with an opposition memorandum, declarations, and copies of prison records (including grievances, and incident and disciplinary reports). (ECF Nos. 107-08.) On June 22, 2018, Defendants replied. (ECF No. 111.)

On September 28, 2018, the Court screened out and dismissed Plaintiff's claim of inadequate mental-health treatment. (ECF No. 121, at 2-4.) At the same time, the Court granted summary judgment for Defendants Coombs, Douglas, Roberts, and Thurston, only on claims of inadequate medical treatment, and for Defendants North and Nicholes, only on the ground of retaliation. (*Id*. at 6-18.) This left no remaining claims against Douglas, North and Nicholes.

---

[1]  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

     In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports.  The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims.  This, of course, will allow the court to dig beneath the conclusional allegations.  These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

Plaintiff's request for *pro bono* counsel was also granted to help "Plaintiff file an amended response to the remaining portions of Defendants' summary-judgment motion." (*Id*. at 19.)

*Pro bono* counsel was appointed and filed notices of appearance on January 18, 2019. (ECF Nos. 122-23.) On July 3, 2019, Plaintiff's counsel filed, "Supplemental Memorandum on Behalf of Plaintiff in Opposition to Motion for Summary Judgment." (ECF No. 134.) The memorandum noted, "During the preparation of this memorandum, [Plaintiff] was released from prison. Hence, this supplemental memorandum focuses on three issues: bottom-bunk clearance, failure to protect and the shower issue." (*Id*. at 1.) As evidentiary exhibits, Plaintiff's counsel attached Plaintiff's verified amended complaint and Plaintiff's pro se "Memorandum in Opposition re Defendants' Motion for Summary Judgment." (ECF Nos. 134-2 & 134-3.) On July 16, 2019, counsel filed, "Notice of Fulfillment of Limited Appointment." (ECF No. 136.) Plaintiff is proceeding *pro se* again.

On August 14, 2019, Defendants replied to Plaintiff's supplemental memorandum. (ECF No. 142.) And, on February 19, 2020, Defendants filed a notice of supplemental authority. (ECF No. 143 (citing *Ullery v. Bradley*, 949 F.3d 1282 (10th Cir. 2020).)

## II. SUA SPONTE DISMISSAL

## A. GROUNDS FOR DISMISSAL

Evaluating a complaint for failure to state a claim upon which relief may be granted,  all well-pleaded factual assertions are taken as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not plead a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*;*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

A court must construe pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). This means that if the pleadings can reasonably read "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

## B. DECLARATORY & INJUNCTIVE RELIEF

The Amended Complaint has thirteen requests for declaratory and injunctive relief. (ECF

No. 33, at 54-56.) Again, Plaintiff's "Supplemental Memorandum on Behalf of Plaintiff in

Opposition to Motion for Summary Judgment noted, "During the preparation of this

memorandum, [Plaintiff] was released from prison. Hence, this supplemental memorandum

focuses on three issues: bottom-bunk clearance, failure to protect and the shower issue." (ECF

No. 134, at 1.) Defendants respond, "The issue regarding violations of Due Process and Equal

Protection Clauses in continuing to designate the Plaintiff a gang member was not addressed due

to Plaintiff's release from prison during the pendency of these proceedings. Plaintiff concedes

this issue is moot, and Defendants do not address that claim." (ECF No. 142, at 2.)

> "Mootness is a threshold issue because the existence of a
> live case or controversy is a constitutional prerequisite to federal
> court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d
> 863, 867 (10th Cir. 1996). "This requirement exists at all stages of
> federal judicial proceedings, and it is therefore not enough that the
> dispute was alive when the suit was filed; the parties must continue
> to have a personal stake in the outcome." *Id.*
>
> "Where a plaintiff seeks an injunction, his susceptibility
> to *continuing* injury is of particular importance—past exposure to
> illegal conduct does not in itself show a present case or
> controversy regarding injunctive relief if unaccompanied by any
> continuing, present adverse effects." *Jordan v. Sosa*, 654 F.3d
> 1012, 1024 (10th Cir. 2011) (brackets, ellipses and internal
> quotation marks omitted). "Moreover, a plaintiff's continued
> susceptibility to injury must be reasonably certain; a court will not
> entertain a claim for injunctive relief where the allegations take it
> into the area of speculation and conjecture." *Id.* (internal quotation
> marks omitted). In other words, "[a] claim for equitable relief is
> moot absent a showing of irreparable injury, a requirement that
> cannot be met where there is no showing of any real or immediate
> threat that the plaintiff will be wronged again." *Id.* (internal
> quotation marks omitted).
>
> The mootness doctrine also applies to claims for
> declaratory relief. "When we apply the mootness doctrine in the

> declaratory judgment context . . . what makes a declaratory
> judgment action a proper judicial resolution of a case or
> controversy rather than an advisory opinion is the settling of some
> dispute which affects the behavior of *the defendant toward the
> plaintiff." Id.* at 1025 (brackets and internal quotation marks
> omitted). But as a first step, "the availability of [declaratory] relief
> presupposes the existence of a judicially remediable
> right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

*Burnett v. Fallin*, 785 F. App'x 546, 551-52 (10th Cir. 2019) (unpublished).

The parties are correct that all Plaintiff's requests for declaratory and injunctive relief are mooted by his release from prison. *See McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999). Those requests are thus dismissed, including, specifically, the issue of violations of Due Process and Equal Protection Clauses in continuing to designate the Plaintiff a gang member. This means the following defendants have no claim left against them: Buchannon and Worley.

## C. AFFIRMATIVE LINK

The complaint must clearly state what each individual defendant did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating each defendant's personal participation is essential allegation). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, No. 08-2222, slip op. at 4 (10th Cir. July 20, 2009) (unpublished) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Plaintiff may not name an individual as a defendant based solely on a supervisory role. *See Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone does not support § 1983 liability). And, "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, No. 09-3113, 2009 U.S. App. LEXIS 25787, at *11 (10th Cir. Nov. 24, 2009).

As to Defendants Bigelow and Crowther (wardens), Plaintiff has stated only their passive involvement--i.e., they knew of his claims because of grievances and various communications, and supervision of personnel directly involved in the factual scenarios underlying the claims. This kind of involvement does not qualify as personal participation in breaching Plaintiff's constitutional rights; therefore, Defendants Bigelow and Crowther are also dismissed.

Further, another of Plaintiff's apparent claims (against Defendants Bigelow, Coombs, Roberts and Douglas) lacks appropriate detail in that it sets forth a laundry list of deficiencies in "A-West" housing--e.g., cold temperatures and lack of sanitation--with none of the necessary context to link any defendants to the time and place of these problems. (ECF No. 33, at 25-26.) This claim of generally poor housing conditions is therefore also dismissed.

Finally, Plaintiff's allegation that mistaken gang designation caused him to suffer damage to his leg when physical therapy was curtailed based on gang-designation restrictions (against Defendants Bigelow, Crowther, Harris, Ray, Rentmeister, Walters, and Wilson) is also lacking in appropriate detail that would explain a context in which to link these defendants to anything but passive participation. This claim is likewise dismissed.

### III. SUMMARY JUDGMENT

### A. REMAINING DEFENDANTS & CLAIMS

Here is what remains: claims for damages against Defendants Coombs (cruel and unusual punishment because denial of lower-bunk clearance and failure to provide safe shower); Harris (cruel and unusual punishment because failure to protect); Hutchinson (denial of lower-bunk clearance); Nielson (failure to provide safe shower); Ray and Rentmeister (failure to protect);

Roberts (failure to provide safe shower); Thurston (denial of lower-bunk clearance); Walters and

Wilson (failure to protect).

## B. UNDISPUTED MATERIAL FACTS

These claims are based on the following timeline, drawn from Plaintiff's verified

amended complaint, and accepted as true for purposes of this Order:

### 1. BUNK BED & SHOWER ISSUES

• 9/4/13 - Plaintiff hurt his knee. (ECF No. 33, at 8.)

• 9/5 & 9/12/13 - **Defendant Thurston** denied bottom-bunk clearance when Plaintiff asked, after

hurting knee. (*Id*. at 8-9.)

• 9/17/13 - Plaintiff told **Defendant Nielson**, together with about seven other people, that shower

was unsafe, and asked that shower be fixed. (*Id*. at 10.)

• 9/18/13 - **Defendant Coombs** denied bottom-bunk clearance when Plaintiff asked after hurting

knee. (*Id*.) Plaintiff told Coombs of unsafe shower. (*Id*. at 11.)

• 10/3, 10/25, & 11/15/13 - Plaintiff told **Defendant Nielson**, together with about seven other

people, that shower was unsafe, and requested that shower be fixed. (*Id*. at 10.)

• 11/18/13 - Plaintiff had knee surgery. (*Id*. at 11.) Plaintiff told **Defendants Coombs and**

**Nielson** of unsafe shower and requested shower be fixed. *(Id*. at 12.)

• 11/20/13 - Plaintiff told **Defendants Coombs** of unsafe shower. *(Id*. at 14.)

• 11/25/13 - Plaintiff told **Defendant Roberts** of unsafe shower. (*Id*. at 13.)

• 12/1/13 - Plaintiff fell and injured in broken shower from being shocked. (*Id*. at 12.)

• 1/7/14 - **Defendant Hutchinson** denied bottom bunk, stating Plaintiff must first get medical

clearance--this despite Plaintiff presenting on two crutches and wearing obvious leg

brace; stating he had knee surgery on November 18, 2013, was advised not to bear

weight, and lack of ladder; and asking Hutchinson to verify with medical department. (*Id*.

at 14.)

• 1/9/14 - Plaintiff fell while trying to access top bunk, injuring knee, back and neck. (*Id*. at 15.)

## 2. FAILURE TO PROTECT

• 6/27/14 - Plaintiff labeled Sureno gang member and housed with Sureno inmates. (*Id*. at 18.)

• after 6/27/14 - Plaintiff had two people from outside prison call **Defendant Walters** to tell

Walters he had been threatened and needed to be moved away from Surenos, but he was

not moved. (*Id*. at 30.)

• 7/21/14+ - Plaintiff "continually" told **Defendant Rentmeister** "every single time he saw

Defendant Rentmeister" that Plaintiff was not gang member "[a]nd wanted to move

because the Surenos were threatening Plaintiff telling him 'You are either with us or

against us.'" (*Id*. at 32.) But Rentmeister "failed to act and always stated, 'I don't know

what to tell ya.'" (*Id*.)

• 8/20/14 - Plaintiff said in front of **Defendant Wilson** that Surenos did not want him living with

them and Wilson said, "You can only live with Surenos." (*Id*. at 31-32.)

• 8/26/14+ - Plaintiff "constantly and every time [Plaintiff] saw **Defendant Harris**, always told

him" that Sureno gang members threatened Plaintiff with, "You are either with us or

against us," and of his consequent need to move, but Harris told him to ask Defendant

Walters. (*Id*. at 33.)

• 9/10/14 - Plaintiff told **Defendant Walters** "the gangs were threatening [him]" saying "'It's

either with us or against us'" and he needed to be moved, but he was not moved. (*Id*. at

30.)

• 10/6/14 - Plaintiff told **Defendants Ray** and **Wilson** that he was in "volatile situation" and

needed to be moved, but he was not moved. (*Id*. at 33.)

• 12/11/14 - Plaintiff warned **Defendants Harris** and **Rentmeister** that Sureno and white

inmates believed Plaintiff had heroin and threatened him to give them heroin, and

believed Plaintiff was snitch because he talked to prison staff without gangs' permission,

and therefore he needed to move, but he was not moved. (*Id*.)

• 12/22/14 - Plaintiff told **Defendant Ray**:

> Lobo a member of the sac gang had been constantly threatening Plaintiff
> for heroin and heroin money ever since Plaintiff was falsely
> accused of being in possession of heroin on July 15, 2014. . . .
> Now they are calling me a snitch and a mole. You got to move me.

(*Id*. at 34.) But he was not moved. (*Id*.)

• 1/31/15 - Plaintiff assaulted by other inmates. (*Id*. at 24.)

• 2/1/15 - Plaintiff transported for emergency medical care. (*Id*.)

• 2/2/15 - Plaintiff told **Defendant Wilson**: "The Surenos were standing outside of their cell and

heard me getting attacked and did not help me because I'm not one of them." (*Id*. at 36.)

He therefore asked Wilson to move him, but Wilson said, "No." (*Id*.)

• 2/3/15 through 2/19/15 - Plaintiff punched in head on and off by Sureno inmates. (*Id*. at 24.)

• 2/6/15 - Plaintiff told **Defendant Wilson** that he was in volatile situation and needed to be

moved, but he was not moved. Plaintiff transported for emergency medical care. (*Id*. at

37.)

• 8/18/15 - Complaint filed. (ECF No. 6.)

• 11/17/16 - Amended Complaint filed. (ECF No. 33.)

## C. QUALIFIED IMMUNITY

The remaining defendants move for summary judgment on the remaining claims against

them based on qualified immunity. "The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests--[1] the need to hold public officials accountable when they exercise power irresponsibly and [2] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The purpose of the doctrine is to provide government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).
> "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). When a defendant raises the qualified-immunity defense, the plaintiff must therefore establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Under this two-part test, "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

*Ullery*, No. 19-1079, 2020 U.S. App. LEXIS 3988, at *8-9 (Feb. 10).

The test imposes a "heavy two-part burden." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (internal quotation marks omitted). If the plaintiff fails to satisfy either part of the two-part inquiry, a court must grant the defendant qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first. *See Pearson*, 555 U.S. at 236. "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment...." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

*Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018); *see also Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) ("Only if plaintiff makes that threshold showing does the burden shift to defendants to show that no material facts remain in dispute that would defeat defendant's claim of qualified immunity.") (citing *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992).

The remaining claims here are all brought under the Eighth Amendment's proscription on cruel and unusual punishment. U.S. Const. amend. VIII. ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). The focus is not on the violation of Plaintiff's federal constitutional rights, but instead on his failure to carry his burden of showing that his rights were "clearly established at the time of the defendant's conduct." *Ullery*, at *9.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742).

Accordingly, the Supreme Court has repeatedly admonished circuit courts "not to define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152. Though "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019).

> "Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other [circuits] must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted).

. . . .

. . . [W]e decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity.

*Ullery*, at \*14-15, 17, 35 (other citations omitted); *see also Watson*, 75 F.3d at 577 (stating burden "quite heavy" because "plaintiff must do more than simply allege the violation of a general legal precept [and] . . . must 'instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited'") (first ellipses in original) (quoting *Jantz*, 976 F.2d at 627 (quoting *Harlow*, 457 U.S. at 818)).

The qualified immunity analysis "may appear unduly formalistic considering the despicable nature of Defendant[s'] alleged misconduct. But this is the task required of [courts] under the qualified-immunity precedents [courts] are obligated to follow." *Id*. at \*38.

Having thoroughly reviewed Plaintiff's responses to Defendants' assertion of qualified immunity, (ECF Nos. 107, 108, & 134), the Court concludes that Plaintiff has not met his burden to show his "right was clearly established at the time of the defendant's conduct." *Ullery*, at \*9.

### 1. LOWER-BUNK CLEARANCE

The only case cited by Plaintiff regarding a factual scenario involving bunk-bed safety is *Campbell v. Milyard*, No. 09-CV-1041-CMA-KLM, 2010 U.S. Dist. LEXIS 77120 (D. Colo. May 4, 2010). But, being a district court case, it is not a valid case to cite as a basis for showing the clear establishment of Plaintiff's right. *Ullery*, at *35 ("[W]e decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity.").

Plaintiff therefore has not carried his qualified-immunity burden, resulting in dismissal of this claim and its related defendants who have no other claim pending against them: Hutchinson, and Thurston. (Defendant Coombs was subject to this claim and the unsafe-shower claim, so he is not dismissed at this point.)

### 2. UNSAFE SHOWER

Plaintiff cites no case to show that his particular rights regarding shower safety were clearly established. He again fails to carry his burden, so this claim must also be dismissed, along with its related defendants with no other claim pending against them: Coombs, Nielson, and Roberts.

### 3. FAILURE TO PROTECT

### a. RECAP OF FACTS

In analyzing the cases Plaintiff cites to try to carry his burden upon Defendants' assertion of the qualified-immunity defense, that Defendants are not to be lumped together as a group, but should be treated as individuals, each with his own failure-to-protect claim against him, based on his own behavior. *See Robbins v. Okla. ex rel. Dept' of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (stating complaint must "make clear exactly *who* is alleged to have done *what* to

*whom*, to provide each individual with fair notice as to the basis of the claims against him . . . as distinguished from collective allegations") (emphasis in original) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)).

To ensure understanding that each defendant is responsible for only the allegations regarding himself, the relevant facts are restated below, grouped by defendant:

### i. Defendant Harris

• 8/26/14+ - Plaintiff "constantly and every time [Plaintiff] saw **Defendant Harris**, always told him" that Sureno gang members threatened Plaintiff with, "You are either with us or against us," and of his consequent need to move, but Harris told him to ask Defendant Walters. (*Id*. at 33.)

• 12/11/14 - Plaintiff warned Defendant Harris that Sureno and white inmates believed Plaintiff had heroin and threatened him to give them heroin, and believed Plaintiff was a snitch because he talked to prison staff without the gangs' permission, and therefore he needed to move, but he was not moved. (*Id*.)

### ii. Defendant Ray

• 10/6/14 - Plaintiff told Defendants Ray that he was in "volatile situation" and needed to be moved, but he was not moved. (*Id*.)

• 12/22/14 - Plaintiff told Defendant Ray:

> Lobo a member of the sac gang had been constantly threatening Plaintiff for heroin and heroin money ever since Plaintiff was falsely accused of being in possession of heroin on July 15, 2014. . . . Now they are calling me a snitch and a mole. You got to move me.

(*Id.* at 34.) But he was not moved. (*Id.*)

### iii. Defendant Rentmeister

• 7/21/14, plus - Plaintiff "continually" told Defendant Rentmeister "every single time he saw

Defendant Rentmeister" that Plaintiff was not a gang member "[a]nd wanted to move

because the Surenos were threatening Plaintiff telling him 'You are either with us or

against us.'" (*Id.* at 32.) But Rentmeister "failed to act and always stated, 'I don't know

what to tell ya.'" (*Id.*)

• 12/11/14 - Plaintiff warned Defendant Rentmeister that Sureno and white inmates believed

Plaintiff had heroin and threatened him to give them heroin, and believed Plaintiff was a

snitch because he talked to prison staff without the gangs' permission, and therefore he

needed to move, but he was not moved. (*Id.* at 33.)

### iv. Defendant Walters

• after 6/27/14 - Plaintiff had two people from outside prison call **Defendant Walters** to tell

Walters he had been threatened and needed to be moved away from Surenos, but he was

not moved. (*Id.* at 30.)

• 9/10/14 - Plaintiff told **Defendant Walters** "the gangs were threatening [him]" saying "'It's

either with us or against us'" and he needed to be moved, but he was not moved. (*Id.* at

30.)

### v. Defendant Wilson

• 8/20/14 - Plaintiff said in front of Defendant Wilson that the Surenos did not want him living

with them and Wilson said, "You can only live with Surenos." (*Id.* at 31-32.)

• 10/6/14 - Plaintiff told Defendant Wilson that he was in "volatile situation" and needed to be

moved, but he was not moved. (*Id*. at 33.)

• 1/31/15 - Plaintiff assaulted by other inmates. (*Id*. at 24.)

• 2/1/15 - Plaintiff transported for emergency medical care. (*Id*.)

• 2/2/15 - Plaintiff told Defendant Wilson: "The Surenos were standing outside of their cell and

heard me getting attacked and did not help me because I'm not one of them." (*Id*. at 36.)

He therefore asked Wilson to move him, but Wilson said, "No." (*Id*.)

• 2/3/15 through 2/19/15 - Plaintiff punched in head on and off by Sureno inmates. (*Id*. at 24.)

• 2/6/15 - Plaintiff told Defendant Wilson that he was in volatile situation and needed to be

moved, but he was not moved. Plaintiff transported for emergency medical care. (*Id*. at

37.)

**b. PLAINTIFF'S BURDEN ON ASSERTION OF QUALIFIED IMMUNITY**

Trying to avert summary judgment against him, Plaintiff cites a handful of cases to show

that his rights in this scenario were "clearly established at the time of [Defendants'] conduct."

*Ullery*, at *9.

### i. CONTROLLING AUTHORITY

The "first step in the clearly-established-law inquiry is to consider cases of controlling

authority in this jurisdiction, which would settle the question." *Ullery*, at *17. The Court thus

starts "with Supreme Court and Tenth Circuit decisions [cited by Plaintiff] that have addressed

the asserted right." *Id*.

• ***Farmer v. Brennan***, 511 U.S. 825 (1994). This United States Supreme Court case is a

"seminal decision as to what constitutes 'deliberate indifference.'" *Williams v. Hampton*, 797

F.3d 276, 280 (5th Cir. 2015); *e.g., Estate of Miller v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012); *Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2010). But, it is but an example of "clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152. It lays out the framework for deciding all cases involving deliberate indifference.

However, the factual scenario, while addressing failure to protect, involves an attack on a preoperative transsexual in which the victim-inmate-plaintiff did not express safety concerns, *Farmer*, 511 U.S. at 829, 832. This is quite different than this case, involving the exigencies of gang membership in prison and explicit expressions of safety concerns.

• ***Verdecia v. Adams***, 327 F.3d 1171 (10th Cir. 2003). In this case, inmate Verdecia was placed in a cell with gang members who allegedly assaulted him because of his Cuban nationality. *Id*. at 1173. Verdecia sued Bureau of Prisons employees Collado and Felz for failure to protect. *Id*. Verdecia alleged that he asked Collado "to get him out of his cell . . . but there [was] no evidence that Verdecia explained the reason for his requested transfer." *Id*. at 1176. He then "gave his case manager a transfer form directed to the attention of Felz, which indicated that Verdecia feared an attack from his cell mates. *Id*. There was no evidence, though, that Felz received the form before the attack. *Id*.

Verdecia asserted the defendants should have known that he was at risk of attack because of a couple of disparate prior incidents (e.g., non-gang-related attack and gang-related attack in another institution) with different inmates occurring before he was placed in the housing unit where he was attacked. *Id*. at 1174. Under these facts, the court thought defendants' failure to move Verdecia was perhaps negligent, but not deliberate indifference. *Id*. at 1177. The court thus

concluded "Verdecia cannot establish that Felz's and Collado's actions violated a federal constitutional right or statutory right" and "the defendants are entitled to qualified immunity." *Id*.

*Verdecia* would not have put Defendants here on notice that their behavior was unconstitutional: Foremost, Felz and Collado were determined *not* to have violated Verdecia's constitutional rights. Further, unlike here, Collado and Felz were not told of Verdecia's safety concerns and yet were expected by Verdecia (in retrospect) to extrapolate threats to him from dissimilar situations involving different inmates. *Id*. at 1174. And finally, in contrast to our facts, in which Plaintiff was classified as belonging to the same gang[1] as inmates purportedly threatening him, Verdecia was not in the same gang or nationality as his attackers. *Id*. at 1173-74.

• ***Benefield v. McDowall***, 241 F.3d 1267 (10th Cir. 2001) (unpublished). "[A]n unpublished decision can be quite relevant in showing that the law was *not* clearly established." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018).

Inmate Benefield "asserted that Ms. McDowall put him in danger of attack or even death at the hands of other inmates by circulating rumors that he was a snitch and by showing other inmates a letter he allegedly wrote, indicating that he was giving information to the prison investigations staff." *Id*. at 1270. This much different set of facts than Plaintiff's case does not carry Plaintiff's burden here. And the fact that Plaintiff tries to use this unpublished case with such a vastly different factual scenario to support his argument that the law is clearly established arguably means that *Benefield* is "quite relevant in showing the law was not clearly established."

---

[1] It is true that Plaintiff challenges that classification. However, when Defendants made their individual decisions to not work toward facilitating Plaintiff's move to different housing, they were operating under the assumption that Plaintiff's classification as a Sureno had been correctly designated by prison officials. They therefore may not have been swayed by Plaintiff's assertions that he was in danger because he was not in fact a Sureno.

*Id*. at 1168. In other words, if this is the best Plaintiff can do in showing the law was clearly established, he is more accurately showing the law was *not* clearly established.

• **Summing up**. The analyses for each of these cases is equally applicable to the individual allegations against each defendant. These cases fail to show that law governing a factual scenario similar to Defendants' behavior was clearly established at the time of Defendants' conduct.

Plaintiff has not "identified any case from the Supreme Court or [Tenth Circuit] squarely addressing whether Defendant[s'] conduct violates the Eighth Amendment." *Ullery*, at *21.

## ii. WEIGHT OF OUT-OF-CIRCUIT AUTHORITIES

"In the absence of binding precedent specifically adjudicating the right at issue, the right may still be clearly established based on a 'consensus of cases of persuasive authority' from other jurisdictions." *Id*. at *22 (citing *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)); *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018)). In *Ullery*, the Tenth Circuit's survey of at least seven cases out of six different circuits convinced it that the right at issue "was clearly established at the time of Defendant's unlawful conduct." *Id*. at *22-29.

Here, though, Plaintiff cites just three cases--two out of the Seventh Circuit and one from the Eleventh. (ECF No. 107, at 25-27.)

• ***Pope v. Shafer***, 86 F.3d 90 (7th Cir. 1996). In *Pope*, "[t]here was credible evidence" that inmate Pope told guard Mendenhall of threats "by three other inmates." *Id*. at 91. Mendenhall told guard Shafer, who scheduled Pope "for a move the next day." *Id*. But, Pope "was severely beaten by the three inmates that evening." *Id*. The jury found for Mendenhall and against Shafer. *Id*.

*Pope* has some differences from this case. Here, Plaintiff says he reported to Defendants only general threats (e.g., that he had been threatened or was in "a volatile situation") and did not specify certain inmates.[2] Also, Plaintiff attributes the threats' impetus to gang affiliations; whereas *Pope* does not involve gang designations. And, finally, Plaintiff's allegations generally involve vague threats that he communicated to five different defendants over seven months, as opposed to *Pope*, which involved a specific warning with the attack happening same day.

• ***Brown v. Hughes***, 894 F.2d 1533 (11th Cir. 1990). One morning, inmate Brown approached Sergeant Hughes "about a 'racial problem' in his cell." *Id*. at 1536. Hughes replied that Brown "would have to see the Captain if he wanted a cell change." *Id*. Brown went back to his cell and, within the same morning, "was attacked by another inmate." *Id*. The Eleventh Circuit held that these facts did not support liability for failure to protect. *Id*. at 1537. It reasoned that a report of "a racial problem" was not the same thing as reporting a direct threat or imminent fight and Brown did not push back when Hughes indicated inaction. *Id*. This is another case in which a court suggested the defendant's behavior was more akin to negligence. *Id*.

*Brown* also would not have advised Defendants that their behavior was unconstitutional-- most importantly--because Hughes was determined to have *not* violated Brown's constitutional rights. And, Plaintiff attributes the threats' impetus to gang affiliations; whereas *Brown* does not involve gang issues and designations. And, finally, Plaintiff's allegations generally involve vague threats that he communicated to five different defendants over seven months, as opposed to *Brown*, which involved statement of a "problem," with the attack happening same morning.

---

[2] This does not apply to Defendant Ray, who was told specifically about "Lobo a member of the sac gang." (ECF No. 33, at 34.)

• ***Watts v. Laurent***, 774 F.2d 168 (7th Cir. 1985). Watts was held in a youth facility, where he was not in a gang. *Id*. at 171. Greaves was another inmate who outweighed Watts by thirty pounds and led a gang. *Id*. Watts's "evidence indicated that each of the four defendants who were youth counselors overheard incidents in which Greaves threatened Watts." *Id*. Greaves attacked Watts. *Id*. Defendants were held liable for failure to protect. *Id*. at 170.

There are significant differences between *Watts* and this case: First, *Watts* involves youth offenders, with the attacking inmate significantly larger than victim inmate; whereas, here, there is an adult facility with no mention of inmate sizes. And, second, the *Watts* defendants actually overheard the attacking inmate threaten the victim inmate, which is not the allegation here.

• **Summing up**. While these three cases--two out of the Seventh Circuit and one out of the Eleventh--have some similarities to the case at hand, they also have significant differences. Still, having cited just three cases total (with two from the same circuit), Plaintiff has not shown Plaintiff's right was "clearly established based on a 'consensus of cases of persuasive authority' from other jurisdictions." *Ullery*. at *22 (citing *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)); *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018)). Plaintiff's effort does not begin to approach the Tenth Circuit's survey of at least seven cases out of six different circuits, which convinced it that the right at issue in *Ullery* "was clearly established at the time of Defendant's unlawful conduct." *Ullery*. at *22-29.

Plaintiff has not met his burden of showing, based on the facts he alleges, that his failure-to-protect right against cruel and unusual punishment "was clearly established at the time of [Defendants'] conduct." *Id*. at *9.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) All requests for declaratory and injunctive relief, and the issue regarding violations of Due Process and Equal Protection Clauses in continuing to designate the Plaintiff a gang member, are **DISMISSED** as moot, Plaintiff having been released from UDOC custody.

(2) Defendants Bigelow and Crowther are **DISMISSED** for failure to state a claim upon which relief may be granted.

 (3) General claims regarding poor prison conditions and missing physical therapy are **DISMISSED** for failure to state a claim upon which relief may be granted.

(4) Remaining Defendants' Motion for Summary Judgment is **GRANTED**, based on qualified immunity. (ECF No. 98.)

(5) With no controversy remaining in this Court, this action is **CLOSED.**

DATED this 27th day of March 2020.

BY THE COURT:

_____
JUDGE DAVID NUFFER
United States District Court